1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                              EASTERN DISTRICT OF CALIFORNIA

10

11    FERNANDO GASTELUM,                      Case No.   1:22-cv-00178-KES-CDB

12                   Plaintiff,               ORDER VACATING OCTOBER 30, 2024,
                                              FINDINGS AND RECOMMENDATIONS
13           v.
                                              (Doc. 36)
14    TILLY'S, INC.,
                                              FINDINGS AND RECOMMENDATIONS TO
15                   Defendant.               (1) GRANT DEFENDANT'S MOTION TO
                                              DISMISS AND DECLINE SUPPLEMENTAL
16                                            JURISDICTION OVER PLAINTIFF'S STATE
                                              LAW CLAIM, (2) DENY PLAINTIFF'S
17                                            MOTION FOR LEAVE TO AMEND, and (3)
                                              DISMISS PLAINTIFF'S UNRUH ACT CLAIM
18                                            WITHOUT PREJUDICE

19                                            (Docs. 6, 38)

20                                            **14-DAY OBJECTION PERIOD**

21

22           On February 11, 2022, Plaintiff Fernando Gastelum ("Plaintiff") initiated this action with

23    the filing of a complaint against Defendant Tilly's, Inc.[1] ("Defendant") alleging violations of the

24    American with Disabilities Act (ADA) and California's Unruh Civil Rights Act.  (Doc. 1).  These

25    claims stem from alleged barriers Plaintiff encountered while visiting two facilities owned by

26    Defendant.  (*Id.* ¶¶ 3, 8-13).

27    _____

28           [1] Defendant World of Jeans & Tops dba Tillys ("Defendant") notes it is erroneously sued
      as Tilly's, Inc.  (Doc. 6 at 1).

                                              1

1    **I.    <u>Order Vacating October 30, 2024, Findings and Recommendations</u>**

2    On March 25, 2022, Defendant filed its motion to dismiss for lack of supplemental

3    jurisdiction a claim asserted by Plaintiff pursuant to California's Unruh Civil Rights Act (the second

4    cause of action in Plaintiff's operative complaint).  (Doc. 6).  Plaintiff timely filed an opposition

5    on March 30, 2022, and Defendant replied on April 26, 2022.  (Docs. 9, 11).  Plaintiff thereafter

6    filed two notices of supplemental authority; Defendant filed a response to the first.  (Docs. 12-14).

7    On August 1, 2024, the assigned district judge referred Defendant's motion to the undersigned for

8    preparations of findings and recommendations.  (Doc. 34).

9    On October 30, 2024, the undersigned issued findings and recommendations to decline

10    supplemental jurisdiction over Plaintiff's state law claim, and grant Defendant's motion to dismiss

11    that claim without prejudice to Plaintiff's filing of the claim in state court.  (Doc. 36).  Plaintiff was

12    afforded 14 days after service of the order to file any objections.  (*Id.* at 9).  No objections were

13    filed, however, on November 15, 2024, Plaintiff lodged the first amended complaint ("FAC") and

14    filed the pending motion for leave to amend.  (Docs. 37, 38).

15    **II.    <u>Defendant's Motion to Dismiss Plaintiff's Unruh Act Claim (Doc. 6)</u>**

16    **A.    Governing Legal Standards**

17    Under 28 U.S.C. § 1367(a), a court that has original jurisdiction over a civil action "shall

18    have supplemental jurisdiction over all other claims that are so related to claims in the action within

19    such original jurisdiction that they form part of the same case or controversy under Article III of

20    the United States Constitution."  The Ninth Circuit has concluded that ADA and Unruh Act claims

21    that derive from a common nucleus of operative fact "form part of the 'same case or controversy'

22    for purposes of § 1367(a)."  *Arroyo v. Rosas*, 19 F.4th 1202, 1209 (9th Cir. 2021).

23    However, even where supplemental jurisdiction over a claim exists under § 1367(a), the

24    Court may decline jurisdiction over the claim if:

25    (1) the claim raises a novel or complex issue of State law,

26    (2) the claim substantially predominates over the claim or claims over which the

27    district court has original jurisdiction,

28    (3) the district court has dismissed all claims over which it has original jurisdiction,

2

1      or

2          (4) in exceptional circumstances, there are other compelling reasons for declining

3          jurisdiction.

4      § 1367(c)(1)-(4).

5          Pertinent here, a court deciding whether to apply § 1367(c)(4) must undertake "a two-part

6   inquiry." *Arroyo*, 19 F.4th at 1210. "First, the district court must articulate why the circumstances

7   of the case are exceptional within the meaning of § 1367(c)(4)." (*Id.*) (citations and internal

8   quotation marks omitted). "Second, in determining whether there are compelling reasons for

9   declining jurisdiction in a given case, the court should consider what best serves the principles of

10  economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine

11  articulated in [*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)]." (*Id.*) (citations and

12  internal quotation omitted).

13         After considering § 1367(c)(4) and California's requirements for bringing Unruh Act

14  claims, "numerous district courts in California 'have declined to exercise supplemental jurisdiction

15  over Unruh Act . . . claims brought alongside ADA claims.'" *Block v. Cal.-Fresno Invest. Co.*, No.

16  1:22-cv-1419 JLT SAB, 2023 WL 8675398, at *4 (E.D. Cal. Dec. 15, 2023) (quoting *Rutherford*

17  *v. Nuway Ins. Agency Inc.*, No. SACV 21-00576-CJC-JDE, 2021 WL 4572008, at *1 (C.D. Cal.

18  Apr. 1, 2021)). Underlying these decisions is "the recent confluence of several California-law rules

19  [that] have combined to create a highly unusual systemic impact on ADA-based Unruh Act cases

20  that clearly threatens to have a significant adverse impact on federal-state comity." *Arroyo*, 19

21  F.4th at 1211.

22         Notably, Congress adopted the ADA to address the discrimination encountered by persons

23  with disabilities, providing a private cause of action to seek injunctive, but not monetary, relief.

24  (*See id.* at 1205) (discussing background and relief available under the ADA). And the Unruh Act

25  likewise prohibits disability discrimination, containing a provision, Cal. Civ. Code § 51(f), stating

26  that a violation of the ADA also violates the Unruh Act. However, unlike the ADA, the Unruh Act

27  allows a plaintiff to recover "up to a maximum of three times the amount of actual damage but in

28  no case less than four thousand dollars." Cal. Civ. Code § 52(a).

3

In response to perceived abuses of the Unruh Act, California has enacted requirements for bringing such claims, which requirements the Ninth Circuit has assumed, without deciding, "apply only in California state court." *Vo*, 49 F.4th at 1170. For example, provisions were added (1) regarding the contents of demand letters, Cal. Civ. Code § 55.31; (2) imposing heightened pleading requirements, Cal. Civ. Code § 425.50(a); and (3) requiring an additional filing fee of $1,000 for so called "high-frequency litigants," Cal. Gov't Code § 70616.5(b), *see* Cal. Civ. Code § 425.55(b) (defining a high-frequency litigant to include "[a] plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation").

All of these requirements[2] apply to claims alleging a construction-related accessibility violation, defined as involving "a provision, standard, or regulation under state or federal law requiring compliance with standards for making new construction and existing facilities accessible to persons with disabilities," including those related to the ADA. Cal. Civ. Code § 55.52(a)(1), (6); *see* Cal. Civ. Code § 55.3(a)(2). By enacting such restrictions, California has expressed a "desire to limit the financial burdens California's businesses may face from claims for statutory damages under the Unruh Act." *Arroyo*, 19 F.4th at 1209 (internal quotations omitted). However, "Unruh Act plaintiffs have evaded these limits by filing in a federal forum in which [they] can claim these state law damages in a manner inconsistent with the state law's requirements." (*Id.* at 1213) (internal quotation omitted). Consequently, "the procedural strictures that California put in place have been rendered largely toothless, because they can now be readily evaded." (*Id.*).

Recently, the Ninth Circuit provided substantial guidance on this issue in *Vo v. Choi* in affirming a district court's order denying supplemental jurisdiction over an Unruh Act claim under § 1367(c)(4). *Vo*, 49 F.4th at 1168. In that case, the district court declined supplemental jurisdiction over the Unruh Act claim after giving the plaintiff the opportunity to respond and before addressing the merits of the case. (*Id.* at 1168-69). In reviewing the district court's decision, the Ninth Circuit

---

[2] Cal. Civ. Code § 55.31(a); Cal. Civ. Code § 425.50(a); Cal. Gov't Code § 70616.5(a).

1    held that the district court sufficiently explained why the circumstances of the case were exceptional

2    under § 1367(c)(4), agreeing with the district court that "it would not be 'fair' to defendants and

3    'an affront to the comity between federal and state courts' to allow plaintiffs to evade California's

4    procedural requirements by bringing their claims in federal court." (*Id.* at 1171).  The Court also

5    affirmed the district court's finding that the balance of the *Gibbs* values—economy, convenience,

6    fairness, and comity—provided compelling reasons to decline supplemental jurisdiction, stating

7    that "the district court [properly] analyzed Vo's situation under the *Gibbs* values and determined

8    that the values of fairness and comity favored not retaining jurisdiction over the claim." (*Id.* at

9    1172).  Accordingly, "[g]iven these very real concerns, in addition to the deferential standard of

10   review, [the Ninth Circuit saw] no reason to hold that the district court abused its discretion in

11   determining there were compelling reasons to decline jurisdiction over the Unruh Act claim." (*Id.*).

12       With these legal standards in mind, the Court addresses whether the relevant considerations

13   of § 1367(c)(4) warrant declining the exercise of supplemental jurisdiction over Plaintiff's Unruh

14   Act claim.

15       **B.    Discussion**

16       In support of its motion to dismiss Plaintiff's Unruh Act claim, Defendant argues the Court

17   should decline to exercise supplemental jurisdiction on the grounds that extraordinary

18   circumstances exist given Plaintiff's status at the time he commenced this action as a high-

19   frequency litigant and the need as a matter of comity to respect California's interest in discouraging

20   unverified disability discrimination suits.  (Doc. 6).  In opposition, Plaintiff argues that the Unruh

21   Act's heightened procedural requirements are preempted by 28 C.F.R. § 36.103(c) and, thus,

22   "void." (Doc. 9 at 2).  Plaintiff further argues that the Unruh Act is directed towards attorneys, not

23   litigants, and that comity should be disregarded in light of the ADA.  (*Id.*).

24       The Court begins with the first part of the two-step inquiry under § 1367(c)(4)—whether

25   the circumstances here are exceptional.  *Vo*, 49 F.4th at 1171.

26       As discussed above, California has enacted various requirements that apply to claims

27   alleging a construction-related accessibility violation.  And if the Court were to exercise jurisdiction

28   over Plaintiff's Unruh Act claim, Plaintiff would be permitted to avoid these requirements.  *See*

5

1    *Arroyo*, 19 F.4th at 1213 (noting that potential evasion of California's requirements met

2    exceptional-circumstances prong of § 1367(c)(4)).    Further, such evasion would undermine

3    California's policy interests in enforcing its requirements—providing monetary relief but limiting

4    burdens on small businesses and disincentivizing plaintiffs' attorneys from obtaining "monetary

5    settlements at the expense of forward-looking relief that might benefit the general public." (*Id.*).

6    In his opposition, Plaintiff appears to argue that these circumstances should not be considered

7    exceptional because they are preempted by 28 C.F.R. § 36.103(c).    However, Plaintiff does not

8    support this perfunctory argument with any authority.    In any event, it misconstrues the operation

9    of federal preemption— as other courts and judges within this Court previously held. *See,*

10    *e.g., Gastelum v. Five Below, Inc*., No. 1:22-cv-00825-AWI-SAB, 2022 WL 6224274, at *9–10

11    (E.D. Cal. Oct. 7, 2022) (finding Plaintiff's preemption arguments as to Unruh Act's pleading

12    requirements, but not monetary damages, to be "at best, paradoxical."), report and recommendation

13    adopted, 2023 WL 159577 (E.D. Cal. Jan. 11, 2023); *Gastelum v. TJX Cos., Inc.*, No. 21-cv-06714-

14    VKD, 2023 WL 2224432, at *3 (N.D. Cal. Feb. 24, 2023) (finding Plaintiff's preemption argument

15    to be "neither well-developed nor supported by any authority that actually so holds.").    As such,

16    and there is "little doubt that the first prong [under § 1367(c)(4)] is satisfied here." *Vo*, 49 F.4th at

17    1171.

18        Turning to the second part of the inquiry—whether there are other compelling reasons for

19    declining jurisdiction—the Court considers the *Gibbs* values of economy, convenience, fairness,

20    and comity. *Vo*, 49 F.4th at 1171.    Importantly, this case is an early stage of the litigation—

21    although, regrettably, the case has experienced significant delay given the extraordinary judicial

22    resource emergency confronted by this district—the case has not been scheduled and Plaintiff's

23    claims have not been addressed. *See Arroyo*, 19 F.4th at 1214 (noting that the *Gibb*'s values did

24    not support declining supplemental jurisdiction where the case was at a "very late stage").    Thus,

25    this is not a case "where it makes no sense to decline jurisdiction . . . over a pendent state law claim

26    that that court has effectively already decided." (*Id.*).    Notably, Plaintiff makes no argument that

27    the stage of this case warrants exercising jurisdiction.

28        Moreover, in light of the above discussion of California's requirements for Unruh Act

1   claims, it would not be fair, nor would comity be served, by allowing Plaintiff's Unruh Act claim

2   to proceed without the state court being able to enforce its policy interests as reflected in its various

3   procedural requirements.  (*Id.* at 1213) (noting "comity-based concerns that California's policy

4   objectives in this area were being wholly thwarted" by plaintiffs being able to bring Unruh Act

5   claims in Federal court).

6        On this issue, Plaintiff does not challenge Defendant's assertion that, at the time he

7   commenced this action, Plaintiff was a high-frequency litigant.  While a review of public filings

8   confirms that Plaintiff's status as a high-frequency litigant is not a close call, the Court notes it need

9   only determine whether California's requirements are implicated, not whether they are in fact met.

10  As the Ninth Circuit noted in *Vo*, whether a Plaintiff "has satisfied the heightened pleading

11  requirements" imposed in California is a question for the state court because "[f]orcing the district

12  court to determine if [this is] in fact true would itself run afoul of the *Gibbs* values—especially

13  comity," and would deprive California of playing its "critical role in effectuating the policies

14  underlying [its] reforms."  *Vo*, 49 F.4th at 1173-74 (internal citation omitted).

15       Separately, Plaintiff argues that requiring him to bring a second action in state court would

16  be duplicative and that the Court's limited resources would be better served by requiring the parties

17  to participate in a settlement conference.  (Doc. 9 at 9).  As an initial matter, this argument

18  improperly assumes that Plaintiff will be successful in this action.  However, even accepting such

19  an assumption, the fact that the litigation could prove duplicative or increase costs does not, in light

20  of the other considerations, warrant retaining jurisdiction.  As one court has concluded, "if plaintiff

21  legitimately seeks to litigate this action in a single forum, plaintiff may dismiss this action and refile

22  it in a state court in accordance with the requirements California has imposed on such actions."

23  *Garibay v. Rodriguez*, No. CV 18-9187 PA (AFMX), 2019 WL 5204294, at *6 (C.D. Cal. Aug. 27,

24  2019).  Moreover, it is California's prerogative to impose a heightened filing fee for high-frequency

25  litigants in an effort to curb abuses of the Unruh Act at the risk of the fee being ultimately paid by

26  defendants.  It would undermine comity and fairness were Plaintiff permitted to proceed with his

27  Unruh Act claim in light of California's policy concerns.

28       While Plaintiff acknowledges the Ninth Circuit's holding in *Arroyo* (Doc. 9 at 5-6), he

1    suggests the holding should be disregarded because of federal preemption (*see supra*)
2    separately argues the *Gibbs* factors warrant the Court's exercise of supplemental jurisdiction here.
3    (*Id.*).  But in *Vo*, the Ninth Circuit rejected the type of argument advanced by Plaintiff in affirming
4    the district court's finding that the balance of the *Gibbs* values—economy, convenience, fairness,
5    and comity—provided compelling reasons to decline supplemental jurisdiction.  *Vo*, 49 F.4th at
6    1172 ("the district court [properly] analyzed *Vo*'s situation under the *Gibbs* values and determined
7    that the values of fairness and comity favored not retaining jurisdiction over the claim.").

8        Accordingly, in light of the two-step inquiry under § 1367(c)(4), the undersigned concludes
9    that the circumstances of this case are exceptional and there are other compelling reasons to decline
10   supplemental jurisdiction over Plaintiff's Unruh Act claim.  *See, e.g.*, *Orosco v. Monrroy Enters.*
11   *LLC*, No. 2:23-cv-07818-MEMF (KSx), 2023 WL 10407115, at *5 (C.D. Cal. Nov. 30, 2023)
12   (declining to exercise supplemental jurisdiction over and dismissing Plaintiff's California Unruh
13   Act, Disabled Persons Act, Health & Safety Code and negligence claims following *Vo/Arroyo*
14   analysis); *Kim v. Vegara*, No. EDCV 22-281 JGB (SHKx), 2022 WL 17080182, at *5 (C.D. Cal.
15   Oct. 5, 2022) (same); *Benford v. Hall*, No. CV 22-03337-RSWL-ASx, 2022 WL 20273588, at *3
16   & n.3 (C.D. Cal. July 18, 2022) (same).  The undersigned will therefore recommend that the Court
17   decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim pursuant to 28 U.S.C.
18   § 1367(c)(4).

19   **III.    Plaintiff's Motion for Leave to Amend (Doc. 38)**

20       **A.    Governing Legal Standards**

21       Rule 15 provides that a plaintiff may amend the complaint only by leave of the court or by
22   written consent of the adverse party if the amendment is sought more than 21 days after the filing
23   of a responsive pleading or a motion to dismiss.  Fed. R. Civ. P. 15(a).  "Rule 15(a) is very liberal"
24   and a court should freely give leave to amend when "justice so requires."  *AmerisourceBergen*
25   *Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006); *see Chodos v. W. Publ. Co.*, 292
26   F.3d 992, 1003 (9th Cir. 2002) ("it is generally our policy to permit amendment with 'extreme
27   liberality'") (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th
28   Cir.1990)).

1    Granting or denying leave to amend a complaint under Rule 15 is within the discretion of
2  the court. *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996). "In exercising
3  this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision
4  on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977,
5  979 (9th Cir, 1981); *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011) ("refusing
6  Chudacoff leave to amend a technical pleading error, albeit one he should have noticed earlier,
7  would run contrary to Rule 15(a)'s intent.").

8    A court ordinarily considers five factors to assess whether to grant leave to amend: "(1) bad
9  faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5)
10  whether the plaintiff has previously amended his complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808
11  (9th Cir. 2004). The factors are not weighed equally. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th
12  Cir. 1995); *see Atkins v. Astrue*, 2011 WL 1335607, at *3 (N.D. Cal. April 7, 2011) (the five factors
13  "need not all be considered in each case"). Undue delay, "by itself…is insufficient to justify
14  denying a motion to amend." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). On the other
15  hand, futility of amendment and prejudice to the opposing party can, by themselves, justify the
16  denial of a motion for leave to amend. *Bonin*, 59 F.3d at 845; *see Eminence Capital, LLC v. Aspeon,
17  Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (the consideration of prejudice to the opposing party
18  carries the greatest weight).

19    In conducting this five-factor analysis, the court generally grants all inferences in favor of
20  permitting amendment. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).
21  Moreover, the court must be mindful that, for each of these factors, the party opposing amendment
22  has the burden of showing that amendment is not warranted. *DCD Programs, Ltd. v. Leighton*, 833
23  F.2d 183, 187 (9th Cir. 1987).

24    **B.    Discussion**

25    In the October 30, 2024, findings and recommendations, the undersigned recommended the
26  Court decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim pursuant to 28
27  U.S.C. § 1367(c)(4) and therefore dismiss that claim without prejudice to Plaintiff's filing of the
28  claim in state court. (Doc. 36 at 9). As noted above, Plaintiff did not file objections to those

findings and recommendations.  Instead, Plaintiff filed the pending motion for leave to amend and therewith a contemporaneously lodged FAC "for the primary purpose of establishing [diversity] jurisdiction over" his Unruh Act claims to save those claims from dismissal.  (Docs. 37, 38).  Plaintiff argues there is a complete diversity of citizenship and the amount in controversy exceeds $75,000.  (*Id.*).  Thus, Plaintiff requests the Court grant Plaintiff's motion and accept the lodged FAC filed therewith.  (*Id.*).  Defendant does not oppose the pending motion.  The Court addresses the relevant *Nunes* factors below:

### 1.    Bad Faith

A motion to amend is made in bad faith where there is "evidence in the record which would indicate a wrongful motive" on the part of the litigant requesting leave to amend.  *DCD Programs*, 833 F.2d at 187; *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015) ("In the context of a motion for leave to amend, 'bad faith' means acting with intent to deceive, harass, mislead, delay, or disrupt.") (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006)).  Here, there is insufficient information before the Court to conclude that Plaintiff harbors a wrongful motive in requesting leave to amend.  Although Plaintiff did not file objections to the previous findings and recommendations (Doc. 36), it appears Plaintiff attempts to move this litigation forward in this Court by amending the complaint to allege diversity jurisdiction over his Unruh Act claims.  (Doc. 38).  Accordingly, this factor weighs in favor of amendment.

### 2.    Undue Delay

By itself, a showing of undue delay is insufficient to deny leave to amend pleadings.  *Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973); *DCD Programs*, 833 F.2d at 186.  However, in combination with other factors, delay may be sufficient to deny amendment.  *Webb*, 655 F.2d at 979-80; *see Lockheed Martin Corp. v. Network Solutions Inc*., 194 F.3d 980, 986 (9th Cir. 1999). (substantial delay, while not dispositive, is relevant to whether to permit amendment).  In assessing whether there exists undue delay, a court shall consider if "the moving party knew or should have known the facts and theories raised by the amendment in the original pleading."  *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (citations omitted).  The mere fact that a party fails to offer a reason for not moving to amend earlier does not in itself constitute an adequate basis for

1    denying leave to amend. *Howey*, 481 F.2d at 1190-91. Whether there has been "undue delay"

2    should be considered in the context of (1) the length of the delay measured from the time the moving

3    party obtained relevant facts; (2) whether discovery has closed; and (3) proximity to the trial date.

4    *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798-99 (9th Cir. 1991).

5        Plaintiff undoubtedly knew or should have known at the time he filed the operative

6    complaint — approximately two-and-one-half years before filing his pending motion for leave to

7    amend — the facts and theories permitting him to allege diversity jurisdiction. *Jackson*, 902 F.2d

8    at 1388. Indeed, given that this case has not yet been scheduled or discovery opened, Plaintiff can

9    hardly claim that he discovered facts supporting the existence of diversity jurisdiction at some point

10   after his commencement of this action. This factor weighs against permitting amendment.

11               *3.    Prejudice to the Opposing Party*

12       The most critical factor in determining whether to grant leave to amend is prejudice to the

13   opposing party. *Eminence Capital*, 316 F.3d at 1052. The burden of showing prejudice is on the

14   party opposing an amendment to the complaint. *DCD Programs, Ltd.*, 833 F.2d at 187. There is a

15   presumption in favor of granting leave to amend where prejudice is not shown under Rule 15(a).

16   *Eminence Capital*, 316 F.3d at 1052.

17       Here, Defendant did not oppose the motion for leave to amend nor has Defendant shown

18   any prejudice from granting amendment to the complaint. Thus, this factor weighs in favor of

19   granting leave to amend.

20               *4.    Prior Amendments*

21       The Court's discretion to deny leave to amend is "particularly broad" where a party has

22   previously amended the pleading. *Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Here,

23   Plaintiff's proposed amendments would constitute the first amendment to the pleadings. (Doc. 37).

24   Thus, this factor weighs in favor of granting leave to amend.

25               *5.    Futility of Amendment*

26       A court may deny leave to amend if the proposed amendment is futile or would be subject

27   to dismissal. *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). An

28   amendment is futile if the complaint clearly could not be saved by amendment. *United States v.*

*Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).  However, denial of leave to amend on futility grounds is "rare."  *Zurich Am. Ins. Co. of Illinois v. VForce Inc.*, No. 2:18-cv-02066-TLN-CKD, 2020 WL 2732046, at *3 (E.D. Cal. May 26, 2020) (citing *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003)).  "Ordinarily, 'courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed.'" (*Id.*).

      The undersigned reviews Plaintiff's proposed amendments in the lodged FAC (Doc. 37) to determine if the proposed amendments are futile or would be subject to dismissal.  Plaintiff seeks leave to amend to allege diversity jurisdiction over his Unruh Act claims.  (Doc. 38).  The lodged FAC alleges federal question jurisdiction pursuant to 28 U.S.C. § 1331 and § 1343(a)(3)&(4) for violations of the ADA, as well as diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (Doc. 37 ¶¶ 5, 6).

      For a federal court to exercise diversity jurisdiction, the citizens must be of different states and the amount in controversy must exceed $75,000.  28 U.S.C. § 1332(a).  The amount in controversy is generally determined from the face of the pleadings.  *See Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000).  The party asserting diversity jurisdiction must prove that the amount in controversy exceeds $75,000, bearing in mind that "[c]onclusory allegations as to the amount in controversy are insufficient."  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992)).

      Plaintiff alleges that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as Plaintiff is a citizen of Arizona, Defendant is a citizen of California, and the amount in controversy "to the best of Plaintiff's estimate, greatly exceed[s] the statutory threshold of $75,000.00."  (Doc. 37 ¶ 6).  Plaintiff's lodged FAC states that he seeks: (1) cost of compliance with injunctive relief, (2) damages under the Unruh Act, which provides for "damages in an amount no less than $4,000.00 per Unruh violation per encounter" and for "treble damages pursuant to Cal. Civ. Code § 3345(b), (3) attorney's fees "should Plaintiff hire a lawyer[,]" and (4) punitive damages.  (*Id.* at 1, 7).  The undersigned will address each form of requested relief in turn in determining whether

1    the lodged FAC exceeds the statutory threshold.

2          First, Plaintiff seeks injunctive relief in requesting an order that: "Defendant implement

3    enforceable policies, practices, or procedures to afford goods, services, facilities, privileges,

4    advantages, or accommodations to Plaintiff and others similarly situated"; Defendant removes all

5    barriers to accessibility in all its stores"; and "that Defendant remediate each and every inaccessible

6    element in the stores that are subject of this [FAC.]" (*Id.* ¶ 37(c)-(e)).  In actions seeking declaratory

7    or injunctive relief, the amount in controversy is measured by the value of the object of the

8    litigation.  *Corral v. Select Portfolio Serv'g, Inc.*, 878 F.3d 770, 775 (9th Cir. 2017).  Generally, the

9    amount in controversy is assessed through the "either viewpoint rule," meaning that the amount in

10   controversy in the case is the pecuniary result to either party which the judgment would directly

11   produce.  *Corral*, 878 F.3d at 775; *In re Ford Motor. Co./Citibank (S. Dakota)*, N.A., 264 F.3d 952,

12   958 (9th Cir. 2001).

13         Here, based on the allegations of his proposed first amended complaint, Plaintiff does not

14   carry his burden of demonstrating that the amount in controversy is met.  *See Matheson v.*

15   *Progressive Specialty Ins. Co*., 319 F.3d 1089, 1090 (9th Cir. 2003). *Cf. Martinez v. Epic Games,*

16   *Inc.*, No. CV1910878CJCPJWX, 2020 WL 1164951, at *3–4 (C.D. Cal. Mar. 10, 2020) (examining

17   declarations containing estimates for making websites compliant with ADA and Unruh Act

18   standards); *Mejico v. Online Labels, Inc.*, No. 518CV02636ODWSHKX, 2019 WL 3060819, at *4

19   (C.D. Cal. July 12, 2019) (finding remediation costs and bid estimates to be relevant to the amount

20   in controversy).

21         Plaintiff's lodged FAC does not estimate the value or discuss the nature of the injunctive

22   relief beyond broad requests to compel Defendant to comply with statutory requirements under the

23   ADA and the Unruh Act.  (Doc. 37 ¶¶ 22, 26, 37(c)-(e)).  Plaintiff does not submit supporting

24   estimates or declarations.  Plaintiff states generally in his motion that "the amount in controversy

25   exceeds $75,000.00."  (Doc. 38).  Plaintiff's lodged FAC also alleges that the "barriers identified

26   above are easily removed without much difficulty or expense.  They are the types of barriers that

27   are readily achievable to remove.  Moreover, there are numerous alternative accommodations that

28   could be made to provide a greater level of access if complete removal were not achievable." (*Id.*

13

1   ¶17).  It is therefore speculative whether remedying the barriers identified by Plaintiff (*see* Doc. 37

2   ¶¶ 9, 12) "would require minor, inexpensive fixes or major, costly construction."  *Gastelum v. Hie*

3   *River Park LLC*, Case No. 1:23-cv-00472-SKO, 2023 WL 4161416, at *6 (E.D. Cal. June 22,

4   2023), report and recommendation adopted, 2023 WL 6148222 (E.D. Cal. Sept. 20, 2023).  Without

5   any estimate or citation to authority to inform the Court as to the value of injunctive relief sought,

6   "the request for injunctive relief is too speculative for the Court to appropriately include it in the

7   amount in controversy."  *Gastelum v. Best Buy, Inc.*, Case No. 1:23-cv-00244-ADA-BAM, 2023

8   WL 2588009, at *2 (E.D. Cal. Mar. 21, 2023), report and recommendation adopted, 2023 WL

9   4305113 (E.D. Cal. June 30, 2023); *see Jackson v. Am. Bar Ass'n*, 538 F.2d 829, 831 (9th Cir.

10  1976) (finding the amount in controversy requirement not met when the protected rights asserted

11  "appear to be intangible, speculative, and lack the capability of being translated into monetary

12  value").

13      Second, Plaintiff seeks damages under the Unruh Act "in an amount no less than $4,000.00

14  per Unruh violation per encounter as alleged" in the FAC and for "treble damages pursuant to Cal.

15  Civ. Code § 3345(b)[.]"  (Doc. 37 ¶¶ 37(f)&(g)).  Plaintiff alleges he encountered a number of

16  unlawful barriers to accessibility at Defendant's locations in Bakersfield and Fresno.  (*Id.* at 2-4).

17  At Tilly's Bakersfield, Plaintiff points to three barriers to accessibility: (1) "Entrance door requires

18  greater than 5 lbs of force to open"; (2) "Clear width of accessible routes is less than 32 inches

19  between rows of merchandising displays"; and (3) "Protruding objects reduce clear width of

20  accessible routes between rows of merchandising displays."  (*Id.* ¶¶ 9(a)-(c)).  At Tilly's Fresno,

21  Plaintiff points to two barriers to accessibility: (1) "Clear width of accessible routes is less than 32

22  inches between rows of merchandising displays"; and (2) "Protruding objects reduce clear width

23  of accessible routes between rows of merchandising displays."  (*Id.* ¶¶ 12(a)&(b)).

24      The Unruh Act allows for the recovery of monetary damages.  *Molski v. M.J. Cable, Inc.*,

25  481 F.3d 724, 731 (9th Cir. 2007).  A plaintiff may recover "actual damages … up to a maximum

26  of three times the amount of actual damage but in no case less than four thousand dollars" for "each

27  and every offense" of prohibited discrimination.  Cal. Civ. Code § 52(a).  While the phrase "each

28  offense" is undefined, courts have interpreted it according to its most natural reading as "each

14

violation." *Best Buy, Inc.*, 2023 WL 2588009, at *2 (citing cases).  Construed in this manner, §

52(a) "provides for statutory damages based on each specific instance of non-compliance" under

the Unruh Act.  (*Id.*).  Cal. Civ. Code § 52 also permits the award of treble damages under the

Unruh Act.  *Dep't of Fair Employment and Housing v. Law School Admission Council Inc.*, 896 F.

Supp. 2d 849, 876 (N.D. Cal. Sept. 18, 2012) (citing Cal. Civ. Code § 52); *see Molski v. Gleich*,

318 F.3d 937, 951 (9th Cir. 2003) ("the statutory damages in section 52 … provide for treble

damages[.]"), *overruled in part on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571

(9th Cir. 2010).  A trier of fact may treble damages pursuant to Cal. Civ. Code § 3345(b) "in an

amount up to three times greater than authorized by the statute[.]"  Cal. Civ. Code § 3345(b).

However, district courts have been disinclined to award treble damages where the record is

undeveloped.  *See Spikes v. Shockley*, Case No. 19-CV-523 DMS (JLB), 2019 WL 5578234, at *6

(S.D. Cal. Oct. 28, 2019) ("while Defendant bears the burden on this default judgment due to his

failure to respond, there is no indication Plaintiff's injury would not be adequately redressed with

statutory minimum damages, attorney's fees, and injunctive relief.  Therefore, the Court declines

to award treble damages for Plaintiff and finds the award of statutory damages is sufficient.");

*Spikes v. Mann*, No. 19-CV-633 JLS (RBB), 2020 WL 5408942, at *6 (S.D. Cal. Sept. 9, 2020)

(same).  At this stage of the pleadings, where the record is underdeveloped, it is difficult to infer

that Plaintiff is entitled to treble damages.  *Best Buy, Inc.*, 2023 WL 2588009, at *2.

From the face of the lodged FAC and Plaintiff's allegations therein, it appears that Plaintiff

would be entitled to statutory damages of $4,000 for each of the five identified barriers to

accessibility he encountered at both of Defendant's locations in Fresno and Bakersfield, adding up

to a maximum of $20,000 for Unruh Act violations.  (Doc. 37 ¶¶ 9, 12); *Hie River Park LLC*, 2023

WL 4161416, at *7 ("From the face of the FAC, it appears Plaintiff could be entitled to statutory

damages of $4,000 for each of the five barriers to accessibility he encountered, adding up to

approximately $20,000 for Unruh Act violations.").  Even assuming *arguendo* that Plaintiff's

statutory damages were trebled pursuant to Cal. Civ. Code § 3345(b), which provides an "amount

up to three times greater than authorized by the [Unruh Act,]" this would amount to $60,000.00,

which by itself is under the $75,000 amount in controversy threshold.  *See Best Buy, Inc.*, 2023 WL

2588009, at *2 (finding four barriers to accessibility added up to approximately $16,000 in Unruh Act violations, trebled to $64,000, "which by itself is under the $75,000 amount in controversy threshold.").

Third, Plaintiff seeks "costs and expenses and lawyer's fees should [he] hire a lawyer[.]" (Doc. 37 ¶ 37(i)). "[As] a general rule, attorneys' fees are excludable in determining the amount in controversy because, normally, the successful party does not collect his attorneys' fees in addition to or as part of the judgment." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155 (9th Cir. 1998) (quoting *Velez v. Crown Life Ins. Co.*, 599 F.2d 471, 474 (1st Cir. 1979)). But, "attorneys' fees can be taken into account in determining the amount in controversy if a statute [or contract] authorizes fees to a successful litigant." *JSS Scandinavia*, 142 F.3d at 1155 (quoting *Goldberg v. CPC Int'l Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1992), *cert. denied*, 459 U.S. 945 (1982)). The Unruh Act permits recovery of attorney's fees. Cal. Civ. Code § 52(a); *Molski*, 481 F.3d at 731. However, Plaintiff is representing himself pro se and has not indicated an intent to hire counsel. Accordingly, the request for attorney's fees, expenses, and costs is too speculative and conclusory for the undersigned to appropriately include it in the amount in controversy. *See Matheson*, 319. F.3d at 1090-91.

Lastly, Plaintiff seeks punitive damages "for the sake of example and by way of punishing Defendant in an amount sufficient to deter, make example of, and punish Defendant" and "[d]isgorgement of ill-gotten profits realized through intentional discrimination." (Doc. 37 ¶ 36). Cal. Civ. Code § 3294 provides for the recovery of punitive damages, which states: "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civ. Code § 3294. However, district courts have called into question whether punitive damages are recoverable in addition to treble damages under the Unruh Act. *See Aguilar v. Marinello Sch. of Beauty*, No. CV0900854DMGAJWX, 2010 WL 11582978, at *10 (C.D. Cal. Mar. 29, 2010) ("Where, as here, the social objectives pursued by two categories of damages sought in one cause of action are the same, an award for both would create an impermissible double

16

1    recovery... Accordingly, the Court agrees with the other district courts that have considered this

2    issue and finds Plaintiff ineligible for punitive damages under [Cal. Civ. Code §] 3294."); *Best Buy,*

3    *Inc.*, 2023 WL 2588009, at *3 (citing cases).  For example, in *Doran v. Embassy Suites Hotel*, the

4    district court noted that "the Legislature took the importance of disability rights into account when

5    it crafted the stringent remedies of minimum statutory damages, even in the absence of actual

6    damages, and treble actual damages and attorney's fees, which can be a sizeable amount."  *Doran*

7    *v. Embassy Suites Hotel*, No. C-02-1961 EDL, 2002 WL 1968166, at *3 (N.D. Cal. Aug. 26, 2002).

8    "At the same time that the Legislature specifically provided for these several types of damages

9    in Civil Code sections 52(a) and 54.3(a), it chose not to provide for unlimited punitive damages."

10    *Id*.  The *Doran* court also compared the remedies in other similar statutes, and concluded that the

11    "Unruh Act, like the [Mobilehome Residency Law] and other statutes such as the Song–Beverly

12    Act and the Unfair Business Practices Act, expressly provide for judicial remedies that are punitive

13    in nature, rendering the catchall punitive damages remedy of Civil Code section 3294 unavailable."

14    (*Id.*).  Therefore, it is unclear whether Plaintiff may recover any punitive damages in this case.  *Best*

15    *Buy, Inc.*, 2023 WL 2588009, at *3.

16        Examining the amount in controversy from the face of the lodged FAC, Plaintiff has only

17    demonstrated an amount of approximately $20,000 to $60,000 resulting from Unruh Act statutory

18    damages.  The $75,000 amount in controversy is not met and the lodged FAC as proposed fails to

19    set forth a basis for diversity jurisdiction over Plaintiff's Unruh Act claim.  *See* 28 U.S.C. § 1332(a);

20    *Best Buy, Inc.*, 2023 WL 2588009, at *5 ("[T]he $75,000 amount in controversy is not met and the

21    Court should find that it does not have diversity jurisdiction over Plaintiff's Unruh Act claim [and

22    related state claims].").  The amendments as proposed are futile or would be subject to dismissal

23    such that this factor weighs against granting leave to amend.  *Carrico*, 656 F.3d at 1008.

24        Therefore, the undersigned recommends that the Court deny Plaintiff's motion to amend

25    given Plaintiff's undue delay in seeking leave to amend and given the proposed amendments are

26    futile or would be subject to dismissal because the Court does not have diversity jurisdiction.

27    ///

28    ///

1    **IV.    ORDER, FINDINGS, AND RECOMMENDATIONS**

2          For the reasons set forth above, **IT IS HEREBY ORDERED** that the Findings and

3    Recommendations issued October 30, 2024 (Doc. 36) are VACATED.

4        And **IT IS RECOMMENDED** that:

5    1.  The Court GRANT Defendant's motion to dismiss for lack of jurisdiction (Doc. 6) and

6        DECLINE to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim pursuant

7        to 28 U.S.C. § 1367(c)(4).

8    2.  The Court DENY Plaintiff's motion for leave to amend (Doc. 38).

9    3.  Plaintiff's Unruh Act be DISMISSED without prejudice to Plaintiff's filing of this claim in

10       state court.

11         These Findings and Recommendations will be submitted to the United States District Judge

12   assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after

13   being served with a copy of these Findings and Recommendations, a party may file written

14   objections with the Court.  Local Rule 304(b).  The document should be captioned, "Objections to

15   Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave

16   of Court and good cause shown.  The Court will not consider exhibits attached to the Objections.

17   To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the

18   record by its CM/ECF document and page number, when possible, or otherwise reference the

19   exhibit with specificity.  Any pages filed in excess of the 15-page limitation may be disregarded by

20   the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. §

21   636(b)(l)(C).  A party's failure to file any objections within the specified time may result in the

22   waiver of certain rights on appeal.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

23   IT IS SO ORDERED.

24       Dated:   **February 3, 2025**

25                          UNITED STATES MAGISTRATE JUDGE

26

27

28